UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES M.,[1]<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2]<br><br>　　　　　　Defendant. | Case No. 2:21-CV-00075-DCN-DKG<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff filed a Complaint with this Court seeking judicial review of the

Commissioner's denial of his application for disability and disability insurance benefits.

(Dkt. 1.) The matter has been referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(A), and is fully briefed. (Dkt. 10, 15, 20.) Having carefully reviewed

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021.

the parties' memoranda and the entire administrative record (AR), the Court will recommend that the decision of the Commissioner be reversed and remanded for the reasons set forth below.

## BACKGROUND

On October 24, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on July 30, 2019. (AR 38, 226.) Plaintiff meets the insured status requirements through March 31, 2021. The applications were denied initially and on reconsideration.

A hearing was conducted on September 3, 2020, before Administrative Law Judge (ALJ) Jesse K. Shumway.[3] After considering testimony from Plaintiff, a medical expert, and a vocational expert, on September 28, 2020, the ALJ issued a written decision finding Plaintiff not disabled. (AR 38-48.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date, Plaintiff was sixty-four years of age. (AR 85, 226.) Plaintiff has past relevant work experience as a telecommunications salesperson. (AR 251.) Plaintiff claims he is unable to work due to stage IV prostate cancer.

---

[3] The hearing was conducted telephonically due to the Coronavirus Pandemic of 2019 (COVID-19). (AR 38.)

## THE ALJ DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1594.

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 40.) At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: metastatic prostate cancer and degenerative disc disease of the spine. (AR 40.) The ALJ further concluded that Plaintiff's hydronephrosis and psoriasis were not severe impairments. At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 41.)

The ALJ next found Plaintiff retained the residual functional capacity (RFC) for light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: he can never climb ladders, ropes, or scaffolds; occasionally stoop, crawl, kneel, crouch, and climb stairs and ramps; cannot have concentrated exposure to vibration; and cannot have exposure to extreme cold, extreme heat, or hazards. (AR 42.) At step four, the ALJ

concluded Plaintiff is capable of performing his past relevant work as a utility sales

representative. (AR 47.) The ALJ therefore determined Plaintiff is not disabled.

## ISSUES FOR REVIEW

1. Whether the ALJ properly evaluated the medical opinion evidence?

2. Whether the ALJ properly evaluated Plaintiff's statements?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal

error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v.
Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a

whole, weighing both the evidence that supports, and the evidence that does not support,

the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court

considers only the reasoning and actual findings identified by the ALJ and may not affirm

for a different reason or based on post hoc rationalizations attempting to infer what the

ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of

the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court

will not reverse the ALJ's decision if it is based on harmless error, which exists where the

error is "inconsequential to the ultimate nondisability determination, or if despite the

legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*,

806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina*

*v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1.      Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence

of Jeffrey Allen, M.D., Alvin Stein, M.D., and the state agency medical consultants. (Dkt.

17, 19.) Defendant maintains the ALJ properly considered the medical opinion evidence

and explained the bases for his evaluations of the opinions as required by the regulations.

(Dkt. 18.)

### A.      Legal Standard

Under the regulations governing an ALJ's evaluation of medical opinion evidence

for claims filed on or after March 27, 2017, such as here, the ALJ is not required to give

deference to any medical opinion, including treating source opinions. 20 C.F.R. §

404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to

"provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's

opinion."). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

In fashioning a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). The ALJ is not obligated to discuss every piece of evidence when interpreting the evidence and developing the record, or discuss every word of a medical opinion or include limitations not assessed by a medical source. *Edwin C. v. Kijakazi*, 2021 WL 7286046, at * 6 (C.D. Cal. Nov. 19, 2021) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). "However, the ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected." *Id.* (citing *Robbins*, 466 F.3d at 883; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

With the above considerations in mind, the Court now turns to the ALJ's evaluation of the medical opinions.

### B.      Jeffrey Allen, M.D.

Allen, Plaintiff's treating oncologist, completed two physical assessments opining as to Plaintiff's impairments and ability to perform work-related activities. (AR 598, 629-631.) In the first assessment, dated April 6, 2020, Allen found that Plaintiff had a "complete restriction to work duties in addition to no weight bearing activities, exertion on any level other than to ambulate for short distances." (AR 598.)

In the second assessment, dated August 5, 2020, Allen reported that Plaintiff suffered from fatigue, shortness of breath upon exertion, bone discomfort when standing,

pain, joint pain, generalized weakness, numbness, tingling, blurred vision, memory changes and confusion which were expected to last approximately six months. (AR 629.) Allen stated that Plaintiff's impairments limited his ability to bend, breath, concentrate, hear, interact with others, lift, perform manual tasks, reach, see, sit, stand, think, and walk. (AR 629.) Specifically, Allen found Plaintiff could never lift, carry, push, or pull any weight; and could never, bend, stoop, crouch, climb, twist his upper body, reach, squat, kneel, or use vibrating tools. (AR 630.) Allen limited Plaintiff to occasionally balancing and repetitive use of his hands for less than ten minutes; and flexing or extending his neck, and use of his hands for power gripping for less than five minutes. Allen opined that Plaintiff could sit for one hour before needing to shift position, and could stand and walk for ten minutes. Allen estimated the limitations assigned would last for six months - from July 27, 2020 through January 27, 2021. (AR 630.)

Relevant here, Allen noted Plaintiff would need follow up treatment appointments five to six times per month, with each lasting two to three hours, through February 11, 2022. (AR 631.) Allen further reported that through February 11, 2022, Plaintiff would experience flare-ups impacting his ability to perform job functions four to five times per week, with each occurrence lasting eighteen to twenty hours.

The ALJ found Allen's opinions unpersuasive, stating:

> Allen's assessments cannot be found particularly persuasive or influential as they are unrealistically extreme and dramatically overstate endorsed limitations in comparison to the claimant's longitudinal record. His blanket statements of the claimant's inability to perform all work activities is also an issue reserved to the Commissioner. More importantly, he further

> indicated that he saw the claimant only every 4-5 months and that his assessment would need to be reevaluated in January 2021, and he only endorsed this assessment for six months (July 27, 2020 to January 27, 2021). Finally, his assessments are not consistent with the claimant's reports of moving [sic] his lawn for 30 minutes and doing light household chores as well as shopping.

(AR 46-47.)

Plaintiff contests the ALJ's reasons for finding the opinion unpersuasive, arguing the ALJ erred by: falsely concluding Plaintiff saw Allen only every four to five months; finding Allen's opinion inconsistent with records showing improvement, stable findings, and no progression of his cancer; and discrediting the opinion because it assigned limitations only through January 27, 2021, when Plaintiff would be reevaluated. (Dkt. 17 at 12-14.) Defendant maintains the ALJ reasonably evaluated Allen's opinion consistent with the applicable regulations. (Dkt. 18 at 14-16.) Having carefully reviewed the record, the Court finds harmful error in the ALJ's evaluation of the opinion.

Specifically, the ALJ incorrectly concluded that Plaintiff saw Allen "only every 4-5 months." (AR 46.) Both of Allen's assessments clearly state that Plaintiff had multiple treatment appointments every month. (AR 598) (reporting Plaintiff's frequency of visits was four to five times monthly); (AR 631) (reporting Plaintiff had five to six appointments every month). Indeed, Allen's more recent August 5, 2020 assessment reported that Plaintiff would need follow up treatment appointments five to six times each month, lasting two to three hours, beginning January 31, 2020 through February 11, 2022. (AR 631.) Thus, Allen projected Plaintiff would need to attend follow up treatment

appointments multiple times each month for two years. The ALJ's conclusion regarding the frequency of Plaintiff's monthly appointments was, therefore, not supported by the record. Further, the ALJ made no mention of Allen's opinion that Plaintiff would experience flare-ups of his symptoms four to five times per week for twelve months, with each flare-up lasting eighteen to twenty hours. (AR 631.) Critically, the ALJ did not discuss whether Plaintiff would be absent from work more than four days per month as a result of the frequency of his follow up treatment appointments or flare-ups. This, the Court finds, was harmful error.

Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d at 1115. An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

None of the ALJ's questions to witnesses or the hypotheticals posed to the vocational expert during the hearing included any limitation for work absences to attend follow up treatment or for symptom flare-ups. (AR 79.) In response to questions from Plaintiff's attorney, however, the vocational expert testified that, based on her experience,

**REPORT AND RECOMMENDATION - 10**

an individual needs to be able to attend work consistently and "if someone is missing 16 hours of work or more per month and if that's happening regularly, I think that…would be beyond employer tolerances for attendance and, again, that person would not be competitively employable in the long term." (AR 82.) Still, the ALJ did not address absenteeism in the written decision despite Allen's opinion regarding the frequency of treatment and flare-ups, and the vocational expert's testimony. Rather, the ALJ incorrectly interpreted Allen's opinion concerning the number of follow up treatment appointments, and ignored Allen's opinion regarding flare-ups all together. The ALJ therefore erred by failing to explain his consideration of all of the significant probative evidence contained in Allen's opinion. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (an ALJ's written decision must state reasons for disregarding significant probative evidence).[4] Namely, whether the frequency of Plaintiff's follow up treatment appointments or flare-ups would preclude his ability to maintain employment.

 Had the ALJ properly considered all of the limitations in Allen's opinion, the RFC

---

[4] There may have been valid bases for the ALJ to have found Allen's opinion as to the frequency of follow up treatment and flare-ups, to be unpersuasive. Indeed, the Court gave serious consideration to recommending the decision be affirmed given the ALJ's focus during the hearing on Plaintiff's non-temporary impairments that would persist following treatment. It is possible the ALJ believed Plaintiff's treatment had concluded and there would be no follow up treatment appointments and that his flare-ups were temporary. The ALJ, however, did not make either of those findings and the Court may not speculate as to the ALJ's reasoning. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (the Court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). Further, given the ALJ's erroneous reading of Allen's opinion, it is impossible for the Court to discern how the ALJ would have evaluated the persuasiveness of the opinion and the resulting functional limitations assessed in the RFC, had the ALJ read the opinion correctly.

and hypothetical questions posed to the vocational expert may have contained additional limitations. For example, the RFC and hypothetical questions may have included that Plaintiff would miss more than four days of work per month due to his impairments as a result of the frequency of his follow up appointments and/or flare-ups. However, the RFC and hypothetical questions the ALJ relied upon did not contain that limitation. (AR 79-80.) Had the limitation reflecting absenteeism been included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have been different. Accordingly, the ALJ's failure to properly consider Allen's opinion was not harmless and requires reversal. *See Molina*, 674 F.3d at 1117 (an error is not harmless if it "alters the outcome of the case").

While the ALJ provided other valid supported reasons for finding the opinion unpersuasive, the Court finds the ALJ's mistaken finding regarding the frequency of treatment appointments that Allen estimated would continue to February 11, 2022, and the ALJ's failure to address Allen's opinions concerning flare-ups constitutes harmful reversable error given the vocational expert's testimony concerning absences. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (The ALJ's errors were not harmless because they were not "inconsequential to the ultimate nondisability determination."). For these reasons, the Court will recommend that the decision of the Commissioner be reversed.

### C.    Other medical opinion evidence

Having determined the ALJ committed harmful error in evaluating Allen's

opinion, this case must be remanded for further consideration. Because reconsideration of Allen's opinion may impact the ALJ's treatment of the evidence from Alvin Stein, M.D., and the state agency medical consultants, the Court declines to consider whether the ALJ committed harmful error in evaluating these other medical opinions. Rather, the ALJ should reassess the record and medical opinion evidence as necessary on remand.

**2.      Plaintiff's Symptom Statements**

**A.      Legal Standard**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029, at *1-2.  The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.    Plaintiff's Statements and Testimony

In his functional report dated November 4, 2019, Plaintiff states his impairments cause nausea, vomiting, fatigue, mucositis, alopecia, weakness, chronic pain, and limits

driving. (AR 259.) Plaintiff reports that lifting, bending, and walking have become more painful. Plaintiff is able to mow the lawn and garden once a week for thirty minutes, clean house for twenty to thirty minutes, take thirty minute walks daily, shop in stores once a week for thirty minutes, attend church, and go out for dinner occasionally. (AR 261-62, 264.) Plaintiff indicated he has trouble with: lifting more than twenty pounds; squatting; bending; standing; walking, and sitting because of back spasms; reaching; kneeling; concentrating. (AR 265.)

On January 30, 2020, Plaintiff completed an activities questionnaire describing his difficulties with sitting, standing, and walking due to pain; his activities of daily living including shopping once a week, caring for his father, and walking or riding a recumbent bike when able; trouble with heavy lifting; and fatigue. (AR 286-289.) Plaintiff states he has constant back and leg pain, back spasms, edema in his legs, loss of feeling in feet and toes, trouble with his memory and focus, and fatigue. (AR 289.)

Plaintiff submitted a supplemental statement dated February 13, 2020, reporting that he has difficulty keeping up his stamina when walking short distances (200 feet or more), was undergoing radiation therapy to mitigate future bone fractures and relieve pain, and receiving treatment for a skin rash. (AR 285.) Plaintiff stated that he started taking Oxycodone more often, because Advil was not relieving his pain as well as before.

During the hearing before the ALJ, Plaintiff testified that he had difficulty sleeping due to back pain for twenty years, made worse by his cancer; shoulder pain with lifting; and radiating leg/hip pain making it difficult to balance and sit for a prolonged

time. (AR 72-73.) He also reported having fatigue with walking more than a quarter mile, and needing to nap and sit in a recliner to rest and elevate his legs to ease edema. (AR 74-76.)

### C.     ALJ's Decision

In evaluating Plaintiff's symptom statements, the ALJ found his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (AR 42.) Specifically, the ALJ noted Plaintiff's metastatic prostate cancer with bone and lymph node metastases was successfully treated and dramatically improved within twelve months of diagnosis. The ALJ further observed records showing Plaintiff consistently reported having moderate to no significant functional impairment, even during treatment; was doing well and had improvement in his pain; was able to perform particular daily activities; responded well to treatment; and reported taking retirement. (AR 42-43.) The ALJ concluded:

> Based on the objective evidence, the claimant's pattern of past contemporaneous reports to medical providers, the ECOG scores assigned throughout the record, and the claimant's high-functioning activities of daily living, I cannot fully credit his contrary allegations of ongoing debilitating symptoms.

(AR 43.)

### D.     Analysis

Plaintiff argues the ALJ erred in assessing his symptom statements by failing to

consider his strong work history. (Dkt. 17 at 18-20.)[5] In particular, Plaintiff contends the ALJ was required to consider his virtually uninterrupted work history for the approximately forty-six year period prior to his alleged onset date when evaluating the credibility of his statements. In response, Defendant argues the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. (Dkt. 18 at 5.) For the reasons that follow, the Court finds the ALJ properly considered Plaintiff's symptom statements.

Plaintiff's argument assigning reversable error for failure to consider his work history has been rejected by several district courts. *See e.g., Darren Jeffrey C. v. Kijakazi*, 2022 WL 4474261, at *18-19 (S.D. Cal. Sept. 26, 2022); *James I. v. Kijakazi*, 2021 WL 6050310, at *4 (D. Alaska Dec. 21, 2021); *Morgan v. Saul*, 2020 WL 6285190, at *6 (E.D. Cal. Oct. 27, 2020) (citing cases); *Dugger v. Berryhill*, 2018 WL 1413367, at *5 (D. Idaho Mar. 21, 2018); *Greer v. Comm'r of Soc. Sec. Admin.*, 2018 WL 5885942, at * 7 (C.D. Cal Nov. 7, 2018) ("[T]he Court rejects Plaintiff's contention that the ALJ was required to address Plaintiff's 'exemplary work history' in assessing her credibility."). Although not binding precedent, the Court finds the reasoning of the above-cited decisions instructive and consistent with this Court's own view of the issue.

While Plaintiff's work history may be relevant to the ALJ's assessment of his

---

[5] Plaintiff also argues the ALJ erred in assessing his symptom statements "generally because of the errors described above" relevant to the medical opinion evidence. (Dkt. 17 at 18.) This generalize argument fails to specify what error is occurred and, therefore, will not be addressed separately.

symptom statements, the failure to consider work history, as a stand-alone proposition, does not constitute error requiring remand. *Dugger*, 2018 WL 1413367, at *5. Rather, work history may be one of several factors the ALJ considers. But, the failure to consider each and every factor when there is substantial evidence in the record as a whole to otherwise support the ALJ's adverse credibility finding does not constitute error. Where the ALJ articulates other valid reasons supported by substantial evidence in the record to uphold the determination, the ALJ's failure to explicitly reference Plaintiff's work history in the written decision is not reversable error. *Molina*, 674 F.3d at 1115.

Credibility determinations are reserved to the Commissioner, and the Court may not substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."). Where the ALJ identifies valid reasons supported by substantial evidence for the assessment of Plaintiff's symptom statements, any error resulting from other invalid reasons is harmless. *See Carmickle*, 533 F.3d at 1162 (ALJ's specific reasons for discounting claimant's credibility may be upheld even if other reasons were invalid, as long as "remaining reasoning and ultimate credibility determination" were supported by substantial evidence); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

Here, the ALJ observed records showing Plaintiff's condition was successfully treated within twelve months of diagnosis, with both objective and clinical evidence of dramatic improvement within treatment. (AR 42-43.) The ALJ further explained Plaintiff reported moderate to no significant functional impairment, even during cancer treatment; was recovering well and had improvement in his pain; continued to perform household chores including mowing the lawn; went out weekly to shop, attend church, and dine; walked a quarter mile daily; and took retirement suggesting a non-disability motivation for stopping work. (AR 43.) These are clear and convincing reasons for the ALJ's assessment of Plaintiff's symptom statements, which are supported by the record and uncontested by Plaintiff. Accordingly, the Court finds the ALJ's assessment of Plaintiff's symptom statements was free of legal error and supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Court finds harmful error in the Commissioner's evaluation of the medical opinion evidence. Therefore, the RFC assessment and the disability determination are not supported by the record. The Court will recommend that the decision of the Commissioner be remanded for further proceedings.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at

**REPORT AND RECOMMENDATION - 19**

1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Here, the ALJ erred in evaluating the medical opinion evidence. The circumstances presented in this case suggest that further administrative review could remedy the Commissioner's errors, and there are serious doubts as to whether Petitioner is in fact disabled within the meaning of the Social Security Act. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *McLeod*, 640 F.3d at 888; *Harman*, 211 F.3d at 1179-81. Accordingly, remanded for further proceedings is appropriate.

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED** that:

1)   The decision of the Commissioner of Social Security be **REVERSED**;

2)   This action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion;

3)   The Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

4)   Judgment be **ENTERED** in favor of Plaintiff.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: December 13, 2022

Honorable Debora K. Grasham
United States Magistrate Judge